# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT KNOXVILLE

Assigned on Briefs September 24, 2024

## STATE OF TENNESSEE v. JOHNNY RAY DEYTON

**Appeal from the Criminal Court for Johnson County**
**No. 2022-CR-91     Lisa Rice, Judge**

_____

### No. E2024-00252-CCA-R3-CD
_____

The Defendant, Johnny Ray Deyton, appeals his Johnson County Criminal Court convictions of possession of twenty-six (26) grams or more of methamphetamine with intent to sell or deliver, felony tampering with evidence, and various other misdemeanor drug and driving related offenses, for which he received an effective sentence of thirteen years' imprisonment. Before trial, the Defendant filed a motion to suppress all evidence derived from the traffic stop which led to his arrest and indictment, arguing that the stop was an unreasonable warrantless seizure of his person in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Tennessee Constitution. Following a hearing, the trial court denied the Defendant's motion and determined that the traffic stop was supported by reasonable suspicion of reckless driving. The sole issue presented on appeal is whether the trial court erred in denying his motion to suppress because the traffic stop was not supported by reasonable suspicion. After review, we affirm the trial court's judgment.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and JILL BARTEE AYERS, JJ., joined.

Ryan E. Carroll, Mountain City, Tennessee, for the appellant, Johnny Ray Deyton.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Steven R. Finney, District Attorney General; and Dennis D. Brooks and Leon T. Marshall, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**Facts and Procedural History.**   On June 22, 2022, an officer with the Mountain City Police Department (MCPD) was driving on a one-lane road when he observed the Defendant driving a maroon truck in the opposite direction.  The Defendant "increased speed, went off [the] road striking a ditch while still maintaining [] very close contact with [another] vehicle that had the right of way," got back on the road and "went off [the] road again to avoid striking" the officer's patrol car.  Within minutes, the officer initiated a traffic stop, and as the Defendant stepped out of the truck, a bag suddenly appeared on the ground underneath his truck.  The Defendant smelled strongly of marijuana, admitted that he did not have a driver's license, and begged the officer not to take him to jail.  Various contraband was subsequently recovered, including marijuana and a glass pipe with white residue from the Defendant's person, marijuana "grinders" from inside the truck bed, and a bag from underneath the truck containing a white crystallized substance that Tennessee Bureau of Investigation ("TBI") lab tests later determined to be 44.76 grams of methamphetamine.  The investigation further revealed that the Defendant's license had been revoked, the registration on the truck belonged to a different vehicle, and the vehicle lacked insurance and registration.   Officers also determined that the Defendant had just been released from jail, and he had returned to the jail parking lot in violation of the Sheriff's Office policy.  Based on this conduct, the Defendant was indicted on September 9, 2022, by a Johnson County grand jury of possession of twenty-six (26) grams or more of methamphetamine with intent to sell or deliver, a Class B felony (Count 1), tampering with evidence, a Class C felony (Count 2), simple possession of a Schedule VI controlled substance (Count 3), possession of drug paraphernalia (Count 4), driving on a revoked license (Count 5), all Class A misdemeanors, and reckless driving, a Class B misdemeanor (Count 6).

**Suppression Hearing.**  Prior to trial, the Defendant filed a motion to suppress the evidence recovered during the stop.  As grounds, the Defendant asserted, in relevant part, that "the way the vehicle was driven did not provide Patrolman Ricky Norris, or [Sergeant] Thomas Brown, with reasonable suspicion to initiate a traffic stop," and that the Defendant did not operate his vehicle in a manner that would constitute reckless driving in accordance with Tenn. Code Ann. § 55-10-205.[1]  Had he struck a ditch with his vehicle, the Defendant argued he would have been unable to continue driving and that there would have been damage to his vehicle.

---

[1] The Defendant also argued that he was subject to custodial interrogation at the time of the stop and sought suppression of his verbal statements to law enforcement.  He does not raise this issue on direct appeal; therefore, it is waived.

- 2 -

The State filed a written response and asserted that the traffic stop was supported by "probable cause or reasonable suspicion to believe that a traffic violation has occurred," because the Defendant operated his vehicle in an "unsafe manner, coming very close to striking [Officer] Norris's vehicle and the vehicle in front of him." See Tenn. Code Ann. § 55-10-205 (noting that "any person who drives any vehicle in willful or wanton disregard for the safety of persons or property commits reckless driving"). The State further argued that the Defendant abandoned the bag of methamphetamine because he "discarded [it] under the truck, after he was stopped and . . . relinquished any expectation of privacy" to the bag.

On June 2, 2023, the trial court conducted a hearing on the motion to suppress. MCPD Officer Richard "Ricky" Norris testified that on June 22, 2022, he was driving his patrol car to the Sheriff's Office in Mountain City to pick up some paperwork when he turned onto Honeysuckle Street, a short, narrow, one-lane road traversing a small hill. "[O]nly one vehicle can fit on Honeysuckle Street at a time . . . [o]therwise[,] the other vehicle would have to be off-road." Officer Norris was traveling slowly uphill behind another vehicle when a Ford Ranger truck, driving fast in the opposite direction, suddenly appeared as it turned the corner at the top of the hill, heading directly for a truck in front of Officer Norris's patrol car. The truck narrowly avoided a collision by whipping around the front car, driving into the ditch on the side of the road, and, in the process, damaging a drainage pipe near the ditch. The truck then returned to the road and accelerated toward Officer Norris's patrol car. At this point, Officer Norris looked inside the windshield of the truck and recognized the driver as the Defendant, with whom he had had previous interaction. No passengers were in the truck with the Defendant.

The Defendant's truck was about to collide with Officer Norris's patrol car, but the Defendant swerved his truck around the patrol car and drove off-road a second time before returning to the road again. Through his rearview mirror, Officer Norris observed the Defendant reach the bottom of the hill and turn left onto Crossroads Drive. Officer Norris characterized the Defendant's driving as "very reckless" and "erratic" and stated that he had never seen anyone drive on Honeysuckle Street in the same manner. Officer Norris drove up to the Sheriff's Office parking lot to turn around and briefly lost sight of the Defendant. Officer Norris radioed his partner, Sergeant Thomas Brown, with a description of the truck the Defendant was driving. Sergeant Brown later confirmed that the Defendant was driving into the parking lot area of a Quick Shop convenience store on Crossroads Drive and Highway 421. Officer Norris drove to the location and initiated a traffic stop for reckless driving before the Defendant parked his truck. Sergeant Brown arrived shortly thereafter to assist.

Officer Norris parked his patrol car facing the direction of the Defendant's truck, observed the Defendant sitting in the truck before "coming to rest in the parking space,"

and noted that nothing was on the ground at that time. Before Officer Norris approached the Defendant, he observed the Defendant "rummaging" through the truck, and Officer Norris could not see the Defendant's hands. Officer Norris said the Defendant did not exit his truck until after he was ordered to do so. As the Defendant opened the door, Officer Norris observed something appear underneath the truck. Officer Norris said that it was "strange," that it appeared to look like a bag, and that it required further investigation. Officer Norris continued to approach the Defendant, who appeared very nervous. The Defendant was sweating profusely, stuttered as he spoke, and informed Officer Norris that he had just gotten out of jail within the previous two weeks. The Defendant said he did not have a driver's license and begged Officer Norris not to take him to jail.

During the interaction, Officer Norris noticed the smell of marijuana emanating from the Defendant's person and his truck. Before searching the Defendant's truck, Officer Norris patted the Defendant down and found marijuana in the Defendant's pocket and a small glass pipe with white crystallized residue on it in the Defendant's waistband. A search of the Defendant's truck revealed multiple marijuana grinders in the bed of the truck. Officer Norris said the Defendant was "very cooperative" throughout the process. Officer Norris then inspected the bag he observed underneath the truck. He described the bag as

> packaged in what a lot of people these days are using. They're the bags to try to throw off narcotic K9s. So[,] the bags themselves are supposed to seal scents that K9s can pick up on. And these bags have a picture of a jar on the front, like a sealed jar, like a[n] airtight jar.

There was cellophane inside the bag and a white crystalized substance the field tested positive for 47 grams of methamphetamine inside the cellophane. TBI lab tests later determined the bag actually contained 44.76 grams of methamphetamine.

The officers ran a license check and discovered that the Defendant's license had been revoked, that the license plate attached to the truck belonged to another vehicle, and that the truck was not registered. The Defendant was subsequently arrested and charged with the above offenses. An inventory search of the truck was also conducted because the truck was towed from the parking lot. The only video footage pertaining to the offenses was from the Sheriff's Office parking lot, which was recorded prior to the search of the Defendant and his truck.

Before the suppression hearing, Officer Norris measured Honeysuckle Street, the vehicles involved that day, and took photographs from his vantage point at the time he encountered the Defendant, which were admitted into evidence. The only difference in the photographs was that there was "not as much [black plastic] pipe" in the drainage ditch because on "the date of the actual occurrence . . . it had been driven over and crushed." In

one of the photographs, Officer Norris circled the ditch line at the top of the hill where the first encounter between the Defendant's truck and the truck in front of Officer Norris's patrol car took place. He also illustrated the ditch line where the Defendant's truck went "off-road through and back onto the road." Officer Norris measured Honeysuckle Street and determined it was approximately "ten to [eleven] feet" wide, which he opined was not wide enough for two full-size vehicles.

On cross-examination, Officer Norris identified by photograph the first point he observed the Defendant as "not on top of the hill, but . . . coming off that crest . . . of the hill." He agreed that he could not see the Defendant "behind the house" from his angle coming up the road, and conversely, that the Defendant could not see him. He denied that a driver would have to "drive off-road" to avoid hitting oncoming vehicles. He explained that it is customary for drivers on Honeysuckle Street to pull into a turn off on the right side of the road at the top of the hill to let other vehicles pass. However, given the Defendant's speed and the fact that he drove past the turn off, his only option was to drive off-road to avoid a collision. If the Defendant had not driven off-road, he would have struck another vehicle. Officer Norris agreed there was no accident and no actual contact between the vehicles.

Officer Norris said that his partner observed the Defendant's truck at the Quick Shop parking lot within a minute of the initial encounter. Officer Norris clarified that the Defendant did not exit the truck until he was instructed to do so, and that the Defendant did not have anything in his hands. He described the bag recovered from underneath the Defendant's truck as approximately eight inches in length and five inches wide, and he agreed that if the Defendant had exited the truck with it, Officer Norris would have seen it. Officer Norris further confirmed that his encounter with the Defendant was not captured on his body camera or the dash camera of his vehicle. Officer Norris testified that the Defendant struck the ditch pipe causing property damage; however, he was not charged with vandalism. On redirect examination, Officer Norris said the Defendant had enough room to have stopped and allowed the oncoming vehicles to pass in front of him without driving off-road.

The Defendant called Sergeant Thomas Brown to testify as part of his proof. Sergeant Brown testified consistently with the testimony of Officer Norris; however, he recalled the Defendant was already outside his truck before he was advised to exit the vehicle. Sergeant Brown said it causes "alarm" in a traffic stop any time a door is opened before someone is asked to get out of the vehicle. Sergeant Brown also recalled asking the Defendant about Amber Gary, who had a drug-related criminal history. He did not test any of the items recovered from the Defendant's truck for fingerprints. On cross-examination, Sergeant Brown agreed that he could have been mistaken about whether the Defendant was outside of his truck before being asked to exit it.

Following argument of the parties, the trial court orally denied the motion to suppress and reasoned, in pertinent part, as follows:

So the — obviously probable — proof beyond a reasonable doubt was not required for the officer's assessment. And it's the Court's opinion that the, -- and the Court finds that reckless driving is somewhat of a subjective analysis for an officer on duty.

And the Court finds that the officer testified that he was creeping slowly when [the Defendant] drove around the road there on Honeysuckle; crested the hill; went into the ditch; sped up; went into the ditch a second time. And when he turned to follow him, based upon what his perception of — of the driving as reckless was, [the Defendant] was already out of view. The . . .

And then he found him at the Quick Shop market.

So the Court finds that there's some subjectivity here on the part of the officer to determine based on his observations that clearly this Court's not privy to and the description as provided by the officer could clearly constitute a willful and wanton disregard for the safety and property of others based upon the officer's description here today. So that takes us to the exception for, the search once the officer stops [the Defendant] based upon his observation of his driving and his analysis that what he observed was, in fact, reckless.

The order denying the motion to suppress was filed on June 2, 2023. The evidence presented at trial was consistent with the proof at the motion to suppress, and the Defendant was convicted as charged. The Defendant filed an unsuccessful motion for a new trial, again challenging the constitutionality of the traffic stop. He later filed a timely notice of appeal, and this case is now properly before this court for review.

## ANALYSIS

**Standard of Review.** The standard of review applicable to suppression issues involves a mixed question of law and fact. State v. Garcia, 123 S.W.3d 335, 342 (Tenn. 2003). "[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Cox, 171 S.W.3d 174, 178 (Tenn. 2005) (quoting State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). The Tennessee Supreme Court explained this standard in State v. Odom:

Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld.

Odom, 928 S.W.2d at 23. "However, this court reviews a trial court's application of law to the facts under a de novo standard of review with no presumption of correctness." State v. McKinney, 669 S.W.3d 753, 764 (Tenn. 2023) (citing State v. Echols, 382 S.W.3d 266, 277 (Tenn. 2012)). The Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. The stop of a vehicle and the detention of its occupants constitutes a seizure within the meaning of both constitutions. Whren v. United States, 517 U.S. 806, 809-10, (1996); State v. Day, 263 S.W.3d 891, 902 (Tenn. 2008); State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000).

A warrantless seizure "is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the . . . seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997) (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bartram, 925 S.W.2d 227, 229-30 (Tenn. 1996)). Under these exceptions, "the stop of an automobile is constitutionally reasonable, under both the state and federal constitutions, if the police have probable cause or reasonable suspicion to believe that a traffic violation has occurred." State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997) (citing Whren, 517 U.S. at 810).

Probable cause exists if "at the time of [a seizure], the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." State v. Dodson, 450 S.W.3d 1, 50 (Tenn. 2014) (quoting Echols, 382 S.W.2d at 277-78). Probable cause requires a law enforcement to have more than a mere suspicion that an offense has occurred. Echols, 382 S.W.2d at 278 (citing State v. Lawrence, 154 S.W.3d 71, 76 (Tenn. 2005)).

If an officer lacks probable cause, a traffic stop will still be constitutional if, based on the totality of circumstances, the officer has "a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." State v. Bridges 963 S.W.2d 487, 492 (Tenn. 1997) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968); Yeargan, 958 S.W.2d at 630; State v. Watkins, 827 S.W.2d 293, 394 (Tenn. 1992)).

"Reasonable suspicion is a less demanding standard than probable cause . . . ." Id. (quoting Alabama v. White, 496 U.S. 325, 330 (1990)). "Reasonable suspicion is a particularized and objective basis for suspecting the subject of a stop of criminal activity and must be 'something more than an inchoate and unparticularized suspicion or hunch." State v. Davis, 484 S.W.3d 138, 150 (Tenn. 2016) (internal citations omitted) (internal quotations omitted).

"Many of [Tennessee's] traffic statutes create offenses which render it simple for an officer to determine whether a motorist has committed a violation. . . . When a police officer sees a motorist commit such an offense, the officer will have probable cause to stop the motorist." State v. Smith, 484 S.W.3d 393, 400-01 (Tenn. 2016). Under Tennessee law, reckless driving occurs when a person "drives any vehicle in willful or wanton disregard for the safety of persons or property." Tenn. Code Ann. § 55-10-205(a). "Willful and wanton disregard for another's safety is a factual question properly determined from all the circumstances. It exceeds negligence in that the actor willfully breaches a duty." State v. Wilkins, 654 S.W.2d 678, 680 (Tenn. 1983). It involves "'a heedless and reckless disregard for another's rights, with the consciousness that the act or omission to act may result in injury to another.'" Id. (quoting Burgess v. State, 369 S.W.2d 731, 733 (Tenn.1963)).

The Defendant argues that the June 22 traffic stop was unconstitutional because Officer Norris lacked reasonable suspicion that the Defendant had engaged in reckless driving. Specifically, the Defendant contends that, before nearly crashing into two vehicles, he was driving around a very sharp, blind curve, and that his view of oncoming traffic was obstructed by the house at the top of the hill. The Defendant insists that the only way for the Defendant to have avoided a collision was to drive off-road and that it is unreasonable to suspect someone of reckless driving for driving off-road to avoid an accident. Finally, the Defendant argues that the trial court erred in finding that the State had presented specific, articulable facts showing Officer Norris had reasonable suspicion to conduct a traffic stop because Officer Norris's testimony was not supported by video evidence.

Conversely, the State contends that Officer Norris not only had reasonable suspicion, but probable cause to stop the Defendant. In the State's view, the Defendant's choice to drive off-road to avoid hitting two vehicles, even though there was both a ditch and a home on the side of road, and to accelerate rather than slow down when he approached Officer Norris's patrol car, clearly establishes probable cause of reckless driving. If these facts were sufficient to support a unanimous jury verdict of reckless driving, the State argues, they are sufficient to support the trial court's finding of probable cause during the suppression hearing. Lastly, the State asserts that at a minimum, the stop

was supported by reasonable suspicion because the Defendant's conduct created a dangerous situation for oncoming traffic and nearby property. We agree with the State.

Our review of the record shows that the trial court properly denied the motion to suppress. Officer Norris observed the Defendant driving in the opposite direction on a narrow one-lane road. The Defendant suddenly appeared as he turned the corner at the top of the hill, heading directly for a truck in front of Officer Norris. The Defendant's truck narrowly avoided a collision by whipping around the front vehicle, driving into the ditch on the side of the road, and, in the process, damaging a drainage pipe near the ditch. The Defendant's truck returned to the road and accelerated toward Officer Norris's patrol car. The Defendant was about to collide with Officer Norris's patrol car, but he swerved around the patrol car and drove off-road a second time before returning to the road again. Officer Norris characterized the Defendant's driving as "very reckless" and "erratic" and stated that he had never seen anyone drive on Honeysuckle Street in the same manner. These facts demonstrate that the Defendant drove his truck with willful or wanton disregard for the safety of Officer Norris, the car in front of him, and the drainage pipe, and thus, provided Officer Norris with probable cause to initiate a traffic stop for the offense of reckless driving. See Davis, 484 S.W.3d at 150 (declining to address reasonable suspicion and clarifying that when an officer observes a driver actually committing a traffic infraction, the officer has probable cause to initiate a traffic stop).

Regarding the Defendant's arguments to the contrary, we acknowledge the Defendant's claim that Officer Norris testified on cross-examination there would have been a collision had the Defendant stayed on the road. However, Officer Norris also testified that drivers customarily wait in the turn off area at the top of the hill to let oncoming traffic pass, that the Defendant did not stop when he had the opportunity to do so, and that Officer Norris had never seen anyone drive on Honeysuckle Street in the same manner as the Defendant. The Defendant next argues that he was not charged with vandalism of the drainage pipe; therefore, his driving could not have been reckless. The fact that the Defendant was not charged with vandalism or property damage to the pipe in the ditch when his truck went off-road does not negate his disregard for the safety of Officer Norris or the other vehicle in front of Officer Norris which provided Officer Norris with probable cause to initiate a traffic stop for reckless driving. Finally, the Defendant asserts that the trial court erred in finding that the traffic stop was supported by reasonable suspicion because Officer Norris's testimony was not supported by video evidence. However, the credibility of witnesses are matters entrusted to the trial judge as the trier of fact, and Officer Norris's testimony was deemed credible. Furthermore, video evidence is not required to corroborate an officer's otherwise credible testimony. Because the record does not preponderate against the determination of the trial court, the Defendant is not entitled to relief.

## CONCLUSION

Because Officer Norris observed the Defendant commit a traffic infraction by driving his vehicle in willful or wanton disregard for the safety of other persons or property in violation of Tenn. Code Ann. § 55-10-205(a), Officer Norris had probable cause to initiate the traffic stop of the Defendant.  Accordingly, Officer Norris's seizure of the Defendant did not violate the Defendant's constitutional rights, and the trial court did not err in denying the Defendant's motion to suppress.  Accordingly, we affirm the judgment of the trial court.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE